IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THALIA RENITA HARRIS, ) | |
| ) | No. 23 C 3326 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Thalia Renita Harris appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**Background**

On May 13, 2020, plaintiff applied for benefits, alleging a disability onset date of July 19, 2017. (R. 21, 85, 93.) Her application was denied initially, on reconsideration, and after a hearing. (R. 21-36, 85, 93.) The Appeals Council denied review (R. 1-4), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in

other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. (R. 24.) At step two, the ALJ found that plaintiff has the severe impairments of "degenerative disc disease of the lumbar spine with associated lumbar radiculopathy; degenerative joint disease of the right knee; as well as degenerative disc disease of the cervical spine with, after January 17, 2020, cervical radiculopathy." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or medically equal a listed impairment. (R. 25.) At step four, the ALJ found that plaintiff has the RFC to perform her past relevant work as a hair stylist, and thus she is not disabled. (R. 27-36.)

Plaintiff contends that the ALJ erred because he did not seek an updated medical opinion after plaintiff submitted additional medical records in the form of MRI's from early 2020. The Court disagrees. First, the burden of proving disability is on plaintiff, not the ALJ. *See* 20 C.F.R. §§ 404.1512, 416.912 ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled."); *see also Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) ("It was Summers's burden, not the ALJ's, to prove that she was disabled."). Second, the MRIs plaintiff says an expert should have reviewed were taken on January 17, and February 10, 2020 (R. 968, 1004-05, 1012-13), more than two years before the hearing in this case. (*See* R. 41.) Thus, plaintiff had ample opportunity before the hearing to get an opinion about the MRIs from one of her doctors, but she did not. Third, plaintiff, who was represented by counsel, never asked the ALJ to obtain an expert to review these records. "[A]lthough ALJs bear some responsibility for developing the administrative record . . . , they are also free to assume that a claimant represented by counsel has presented her strongest case for benefits . . . ." *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010). For all of these reasons, the ALJ's failure to obtain expert review of plaintiff's MRIs is not a basis for remand.

Plaintiff also contends that the ALJ should have obtained expert review of her hearing testimony that she has trouble standing because that testimony was not available to the agency experts. But hearings always take place after the state agency experts have conducted their review. Thus, if their inability to review hearing testimony required the ALJ to hire an expert, every ALJ would have to hire an expert in every case, which is not what the regulations require. *See* SSR 96-6P, 1996 WL 374180, at *3-4 (S.S.A. July 2, 1996) (stating that an ALJ "must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in

3

the opinion of the administrative law judge . . . change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."). Thus, the ALJ's failure to obtain expert review of plaintiff's hearing testimony is not error.

Plaintiff also contends that the ALJ should have obtained an expert to consider evidence of reduced grip strength in her right hand. Plaintiff points out that a physical therapy note dated December 3, 2021, says she reported having difficulty with activities of daily living because of pain in her right hand. (R. 693.) However, on January 31, 2022, the same physical therapist said: "At this time patient has achieved maximal benefit from skilled OT. The patient has shown competence and understanding of the discharge home exercise program and is appropriate for discharge with no further need for skilled occupational therapy services at current functional status." (R. 720.)[1] Thus, no expert consideration was necessary to assess plaintiff's limitations as the treating therapist had plainly stated these conclusions.

Plaintiff also contends that the ALJ did not properly evaluate the physical RFC evaluation prepared by Lawndale Plaza SMG, one of plaintiff's treaters. The ALJ found the evaluation to be unpersuasive, in part, because the illegible signature on the form made it impossible to determine whether the evaluator was an acceptable medical source as defined by the regulations. (*See* R. 32.) Plaintiff contends that the ALJ should have contacted Lawndale Plaza SMG to determine whether the evaluator was an acceptable source before rejecting the evaluation. But the ALJ did not discount the evaluation because of the signature issue. Rather, he rejected it on the merits: "[The] opinions in the [checkbox form] are far too cursory or incomplete in nature to offer much assistance

---

[1] Plaintiff also argues that the RFC limitation of frequent handling and fingering with the right hand "lacked support from any medical opinion." (R. 27; ECF 14 at 6.) That is true because none of plaintiff's treaters opined that she needed hand limitations. Nonetheless, the ALJ included this limitation due to "the lingering effects of [plaintiff's] cervical radiculopathy." (R. 30.)

4

in determining [plaintiff's] residual functional capacity. Most importantly, they are simply inconsistent with the medical evidence of record as a whole, which supports much greater physical functioning." (*Id.*) Though the ALJ does not explain in this passage how he weighed the medical evidence, he does so elsewhere in the decision (*see* R. 28-33), which is all that he is required to do. *See Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *4 (N.D. Ill. May 31, 2019) ("[T]he Court reads the ALJ's decision as a whole. The ALJ need not repeat analyses that are relevant to multiple parts of his decision."); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("[W]e do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and we only overturn that weighing if no reasonable mind could accept the ALJ's conclusion.").

Plaintiff's last challenge is to the ALJ's evaluation of her reported symptoms, which the Court will disturb "only if it is 'patently wrong.'" *Summers*, 864 F.3d at 528 (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). The ALJ said this:

> The claimant's treatment history has been largely limited to conservative measures, primarily through medication management, physical therapy, and medical monitoring, with few recommendations for more aggressive treatment modalities. This absence of aggressive treatment suggests that the claimant's physicians did not consider the claimant's physical conditions to be severe, especially to the degree that the claimant has generally alleged. Treating and examining sources regularly observed that the claimant had a normal or slightly diminished gait as well as muscle strength, range of motion, and psychomotor functioning in her extremities, which is inconsistent with the claimant's allegations of disabling physical impairments. Beyond the medical records, the claimant's professed activities of daily living also fail to show debilitating symptoms. The claimant reported that she is generally able to attend to her personal care tasks, complete light household chores, as well as function independently outside of her home as needed, albeit with some physical difficulty (Hearing Testimony; 5E). Therefore, the consistency of the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms as well as the persuasiveness of the opinion evidence and the preponderance of facts arising from the evidence in longitudinal record, including the objective evidence, support the above residual functional capacity assessment.

(R. 33-34.)

5

Plaintiff says it was error for the ALJ to conclude that plaintiff's lack of aggressive treatment undercuts her symptom allegations. Even if that is true, an issue the Court does not decide, that was not the only reason for the ALJ's determination. As a result, it would only be the basis for a remand if the ALJ's other reasons—the reports of plaintiff's treating and examining sources and her activities of daily living—were infirm. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (stating that "[n]ot all of the ALJ's reasons [for discrediting symptom allegations] must be valid as long as enough of them are").

The ALJ's other reasons, however, were not infirm. With respect to the medical evidence, the ALJ said:

> Despite the claimant's complaints of chronic pain and limited daily functioning stemming from her cervical spine issues, her treatment notes show that she typically demonstrated appropriate or only modest deficits in strength, range of motion, sensation, reflexes, or overall musculoskeletal and neurologic capabilities in her upper back, shoulders, and bilateral upper extremities (1F/23; 3F/15; 10F/73-78; 11F/222, 225). In fact, the claimant was discharged from occupational therapy in January 2022 after just seven sessions within a two-month period "…with no further need for skilled occupational therapy services at current functional status" for her upper extremities issues (10F/77).

(R. 29.) The ALJ also noted that the doctor who performed a December 2022 independent evaluation of plaintiff found that she had normal range of motion in her shoulders, elbows and wrists, her upper extremity strength in both arms was 5/5, her grip strength was 5/5 bilaterally, she could oppose fingers, and her ability to perform fine and gross manipulation was normal. (*Id.*) With respect to plaintiff's activities of daily living, the ALJ said that plaintiff was able "to attend to her personal care tasks, complete light household chores, . . . [and] function independently outside of her home as needed, albeit with some physical difficulty." (R. 33 (citing R. 57-63 (plaintiff testifying that she lives alone and she is able to take public transportation, drive, feed and

6

dress herself, and do household chores other than laundry).) In short, the ALJ adequately explained and supported his symptom evaluation. Thus, it is not "patently wrong."

## Conclusion

For the reasons set forth above, the Court affirms the Commissioner's decision and terminates this case.

**SO ORDERED.**  **ENTERED:  April 17, 2024**

**M. David Weisman**
**United States Magistrate Judge**